1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JEFFREY ALLEN ISOM,

11            Petitioner,              No. CIV S-09-CV-2350 GEB CHS P

12        vs.

13   LARRY SMALL,

14            Respondent.         FINDINGS AND RECOMMENDATIONS

15   _____/

16                          **1. INTRODUCTION**

17        Petitioner, Jeffrey Allen Isom, is a state prisoner proceeding pro se with a petition

18   for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is currently serving an aggregate

19   term of one hundred and fifteen years to life following his convictions by jury trial in Butte County

20   Superior Court for three counts of lewd and lascivious acts on a child under fourteen years of age

21   with penalty enhancements for multiple victims as to two of the counts.  In addition, Petitioner

22   admitted the truth of two prior strike convictions.  Here, Petitioner challenges the constitutionality

23   of his convictions.

24                           **II.  CLAIMS**

25        Petitioner presents several grounds for relief.  Specifically, the claims are as follow,

26                                -1-

verbatim:

(1)    [He] was deprived of the effective assistance of counsel where his attorney advised him to admit to having suffered a prior serious felony "strike" for violation of Penal Code 220. Notwithstanding the People's proof would have been otherwise insufficient to prove this prior.

(2)    [He] was subjected to double jeopardy and deprived of the Fifth, Sixth and Fourteenth Amends. where trial counsel advised him to admit to having suffered a conviction under Penal Code section 220, where the evidence was either insufficient or inadmissible under Evid. Code § 1108, based on admission of the live testimony of Jessie Dious relitigated facts to establish the "lewd" element not encompassed in the 1991 guilty plea under § 220; also where the testimony was inadmissible based on it proceeded on Proposition 115 testimony which was multiple hearsay where there is no exception to the hearsay rule.

(3)    [He] was deprived of the Fifth, Sixth and Fourteenth Amends. to a jury determination when the trial court refused to instruct on the lesser offense under Penal Code section 647.6, subdivision (a).

(4)    [He] was deprived of the Fifth, Sixth and Fourteenth Amends. when the trial court abused its discretion by admitting prior offense evidence which involved conduct so dissimilar from the charged offen[s]es that the prejudicial effect of such evidence substantially outweighed its probative value.

(5)    The admission of prior sex offen[s]e evidence to show [his] propensity to commit such offenses violated his constitutional right to due process.

(6)    [He] was deprived of the Fifth, Sixth and Fourteenth Amends. when the trial court instructed that the jury could convict him based on propensity evidence alone.

(7)    [He] was deprived of the Sixth Amendment right to a jury determination of factors relied upon to impose consecutive sentences which increased his sentence beyond the prescribed statutory maximum when the trial court imposed consecutive sentences.

Petitioner's second claim alleging that he was subjected to double jeopardy and that his rights were violated under the Fifth, Sixth, and Fourteenth Amendment is unexhausted and,

1    accordingly, was struck from his petition on May 12, 2009, by order of United States Magistrate

2    Judge Hollows.  Based on a thorough review of the record and applicable law, it is recommended

3    that each of Petitioner's remaining six claims be denied.

### III.  BACKGROUND

**A.  FACTS**

6           The basic facts of Petitioner's crime were summarized in the partially published

7    majority opinion of the California Court of Appeal, Third Appellate District, as follow:

*A.  Charged Offenses*

On July 3, 2003, 12-year-old Samantha and her younger sister went
with their grandmother, Bonnie G., to the Safeway store in Paradise.
There were very few customers in the store at the time.  While the
threesome were standing in the card aisle looking for birthday cards,
defendant walked past Samantha, slid his hand across her bottom for
a second, continued walking down the aisle, and turned the corner.
The only other person standing nearby was at the far end of the aisle
and the aisles were wide, so it was not necessary for defendant to
pass so close to Samantha.   Nevertheless, Samantha told her
grandmother a man accidentally touched her bottom and her
grandmother agreed.

A short time later, while Samantha and her grandmother were in the
cake section, defendant walked by them again and this time he
grabbed Samantha's bottom.  She told her grandmother defendant
grabbed her butt and that he had been following her around the store,
staring at her.  She was shaking and nervous and her voice was
quivering.

When Samantha saw defendant standing at the checkout counter, she
pointed him out to her grandmother, who then pointed her finger at
him and said "[d]on't you dare touch my granddaughter."  When
defendant finished paying for his groceries, he left the store and got
into his pickup truck, where he sat for about 20 minutes.

Meanwhile, another customer, Nancy C., was in the store with her
10-year-old granddaughter Michaela.  While Michaela was standing
next to Nancy C. in one of the aisles, defendant pinched Michaela's
buttocks.  Nobody else was in the aisle.

Michaela told her grandmother that defendant touched her and when
Nancy C. asked her whether it was an accident, the child started to
cry and said "No, grandma, it wasn't an accident.  He grabbed my

-3-

butt." Nancy C. saw defendant who was by then at the end of the aisle. She followed him so she could see what he looked like and what he was doing and continued to follow him until she saw him leave the store.

While Nancy C. and Michaela were on their way to the checkout counter, Nancy C. overheard Bonnie G. telling the store manager about the incident involving Samantha. After asking Bonnie G. whether her granddaughter had been touched too, Nancy C. told the manager what happened to Michaela.

As they left the store, Nancy C. and Michaela saw defendant sitting in his truck in the parking lot. Before leaving the lot, Nancy C. drove past defendant's truck and Michaela wrote down the license plate number and a description of the truck. Nancy C. then saw defendant move his truck to another area in the parking lot where he could view the store entrance, so she returned to the store with Michaela and called the police.

When the police arrived, defendant was still sitting in his truck. Officer Rowe asked him why he was still there and defendant explained that he went to buy briquettes for a barbeque and was checking his receipt to determine if he had enough money in his ATM account to make another purchase. However, he did not have a receipt in his hand and took some time to finally locate it in his wallet. The receipt had no information showing defendant's account balance. When the officer asked defendant about the reported touchings, he denied they happened, but said if he did touch anyone, it was an accident because it was very busy inside.

Meanwhile, Officer Gallagher took Samantha and Michaela outside where each one independently identified defendant as the man who touched her. Defendant was arrested and taken into custody.

*B. Uncharged Offense*

On the morning of May 31, 1991, 15-year-old Jessie was walking alone on a trail on her way to the high school. As she walked through some bushes to a paved bike path, she saw defendant on the path. She walked behind him for a short distance and he kept looking back at her. When she left the path, he took another trail and fell in behind her. As Jessie was about to cross a dry creek bed, defendant ran up behind her, grabbed her, and lifted her off the ground. He put his hand over her mouth and, using "an evil, mean" tone, told her to "shut up" and then pushed her to the ground face down. As she struggled, her glasses and the rocks on the ground scratched her face.

Although defendant was sitting on her, Jessie was able to turn over, but her legs were caught in the bushes, which scraped her legs

whenever she moved them. Meanwhile, defendant was trying to unbuckle her belt. Believing defendant was going to rape her, Jessie decided to fight back and started to scream and hit him. He repeatedly told her to shut up and unsuccessfully attempted to control her flailing arms. When he grabbed her breast, Jessie became enraged and hit defendant harder. He finally fled and she was able to run to the school, where she reported the attack. Defendant pleaded guilty to a charge of assault with intent to commit rape (Pen. Code, § 220) and was sentenced to state prison for the attack.

The defense rested without presenting any evidence.

Ans. Ex. A at 3-6.

Following a jury trial, Petitioner was convicted of committing three counts of lewd and lascivious acts upon a child under fourteen years of age based on the two separate times he touched Samantha and the one time he touched Michaela. The jury found true a multiple victim penalty enhancement allegation as to each count, and Petitioner admitted the truth of two prior serious felony strike convictions, one of which was for the 1991 assault with intent to commit rape on Jessie. Petitioner was sentenced to forty-five years to life on count one, twenty-five years to life on count two, and forty-five years to life on count three. The multiple victim allegation was struck by the court as to count two after a finding that counts one and two were committed on the same occasion. In sum, Petitioner was sentenced to an aggregate indeterminate term of one hundred and fifteen years to life.

Petitioner timely appealed his convictions on multiple grounds to the California Court of Appeal, Third Appellate District. The court affirmed his convictions with a reasoned opinion on December 7, 2006. Resp. Ans. at Ex. A. Petitioner then filed a petition for review of the appellate court's decision in the California Supreme Court. The court initially granted review, then subsequently dismissed review on September 12, 2007. Petitioner filed a petition for writ of habeas corpus in the Butte County Superior Court on June 23, 2008, in which he alleged that he was denied the effective assistance of counsel and his right to a fair and impartial trial under the Fifth, Sixth, and Fourteenth Amendments. The petition was denied on June 24, 2008. Petitioner next filed a petition

for writ of habeas corpus in the California Court of Appeal, Third Appellate District on July 28, 2008, in which he claimed that he was denied the effective assistance of both trial and appellate counsel in several ways, and that his rights to due process of law and a fair trial by an impartial jury were violated.  The petition was denied without comment on July 31, 2008.  Petitioner then filed a petition for writ of habeas corpus in the California Supreme Court, alleging the same claims he presented in his petition to the state appellate court.  The petition was denied on February 11, 2009. Petitioner filed a second petition for writ of habeas corpus in the Butte County Superior Court on January 23, 2009, in which he alleged that trial counsel rendered prejudicially ineffective assistance by advising him to admit that he suffered a prior serious felony strike and by failing to object to testimony on the strike allegation on the grounds that it "relitigated" the facts of the prior felony, in violation of double jeopardy principles.  The petition was denied on January 27, 2009.  Petitioner filed a second petition for writ of habeas corpus in the California Court of Appeal, Third Appellate District, on February 18, 2009, alleging  the same claims he presented in his second petition to the Superior Court.  The petition was denied on February 26, 2009.

Petitioner filed this federal petition for writ of habeas corpus on August 24, 2009. Respondent filed its answer on August 10, 2010, and Petitioner filed his traverse on November 3, 2010.

## IV.  APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

This case is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment on April 24, 1996.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997).   Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 n. 7 (2000).  Federal habeas corpus relief is not available for any claim decided on the merits

1  in state court proceedings unless the state court's adjudication of the claim:

2  　　　　(1) resulted in a decision that was contrary to, or involved an
3  　　　　unreasonable application of, clearly established federal law, as
　　　　determined by the Supreme Court of the United States; or

4  　　　　(2) resulted in a decision that was based on an unreasonable
　　　　determination of the facts in light of the evidence presented in the
5  　　　　State court proceeding.

6  28 U.S.C. § 2254(d). Although "AEDPA does not require a federal habeas court to adopt any one

7  methodology," there are certain principles which guide its application. *Lockyer v. Andrade*, 538

8  U.S. 63, 71 (2003)

9  　　　　First, AEDPA establishes a "highly deferential standard for evaluating state-court

10 rulings." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Accordingly, when determining whether

11 the law applied to a particular claim by a state court was contrary to or an unreasonable application

12 of "clearly established federal law," a federal court must review the last reasoned state court

13 decision. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004); Avila v. Galaza, 297 F.3d 911,

14 918 (9th Cir. 2002). Provided that the state court adjudicated petitioner's claims on the merits, its

15 decision is entitled to deference, no matter how brief. *Lockyer*, 538 U.S. at 76; *Downs v. Hoyt*, 232

16 F.3d 1031, 1035 (9th Cir. 2000). Conversely, when it is clear that a state court has not reached the

17 merits of a petitioner's claim, or has denied the claim on procedural grounds, AEDPA's deferential

18 standard does not apply and a federal court must review the claim de novo. *Nulph v. Cook*, 333 F.3d

19 1052, 1056 (9th Cir. 2003); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

20 　　　　Second, "AEDPA's, 'clearly established Federal law' requirement limits the area of

21 law on which a habeas court may rely to those constitutional principles enunciated in U.S. Supreme

22 Court decisions." *Robinson*, 360 F.3d at 155-56 (citing *Williams*, 529 U.S. at 381). In other words,

23 "clearly established Federal law" will be " the governing legal principle or principles set forth by

24 [the U.S. Supreme] Court at the time a state court renders its decision." *Lockyer*, 538 U.S. at 64.

25 It is appropriate, however, to examine lower court decisions when determining what law has been

26 　　　　　　　　　　　　　　　　-7-

1   "clearly established" by the Supreme Court and the reasonableness of a particular application of that

2   law. *See Duhaime v. Ducharme*, 200 F.3d 597, 598 (9th Cir. 2000).

3   Third, the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have

4   "independent meanings." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  Under the "contrary to" clause,

5   a federal court may grant a writ of habeas corpus only if the state court arrives at a conclusion

6   opposite to that reached by the Supreme Court on a question of law, or if the state court decides the

7   case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*,

8   529 U.S. at 405.  It is not necessary for the state court to cite or even to be aware of the controlling

9   federal authorities "so long as neither the reasoning nor the result of the state-court decision

10  contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).  Moreover, a state court opinion need not

11  contain "a formulary statement" of federal law, but the fair import of its conclusion must be

12  consistent with federal law.  *Id*.

13  Under the "unreasonable application" clause, the court may grant relief "if the state

14  court correctly identifies the governing legal principle...but unreasonably applies it to the facts of

15  the particular case." *Bell*, 535 U.S. at 694.  As the Supreme Court has emphasized, a court may not

16  issue the writ "simply because that court concludes in its independent judgment that the relevant

17  state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*,

18  529 U.S. at 410.  Thus, the focus is on "whether the state court's application of clearly established

19  federal law is *objectively* unreasonable." *Bell*, 535 U.S. at 694 (emphasis added).

20  Finally, the petitioner bears the burden of demonstrating that the state court's

21  decision was either contrary to or an unreasonable application of federal law. *Woodford*, 537 U.S.

22  at 24 ; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

23  **V.  DISCUSSION**

24  **A.     INEFFECTIVE ASSISTANCE OF COUNSEL (Petitioner's Claim One)**

25  Petitioner claims that trial counsel rendered prejudicially ineffective assistance in two

26                                                  -8-

ways.  First, Petitioner contends he received ineffective assistance during a hearing bifurcated from his trial to determine whether he had suffered a prior conviction of a serious or violent felony strike within the meaning of sections 667(d)(1) and 1192.7(c)(10) of the California Penal Code when defense counsel advised him to admit a 1991 conviction for assault with intent to commit rape, a violation of section 220 of the California Penal Code.[1]  Second, Petitioner contends that he received ineffective assistance when counsel failed to object to the testimony of Jessie Dicus,  the victim of the 1991 crime.  According to Petitioner, he suffered prejudice as a result of Ms. Dicus' testimony because the prosecution was permitted to "relitigate" that offense, committed years in the past, in violation of his right not to be subject to double jeopardy and his right to a speedy trial.

The Sixth Amendment to the United States Constitution guarantees to a criminal defendant the effective assistance of counsel.  The United States Supreme Court set forth the test for determining whether counsel's assistance was ineffective in *Strickland v. Washington*, 466 U.S. 668 (1984).  To support a claim that counsel's performance was ineffective, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  *Id.* at 687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance.  *Id.* at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  Second, a petitioner must establish that he was prejudiced by counsel's deficient performance.  *Strickland*, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but

---

[1] Petitioner also mentions that trial counsel advised him to admit another serious felony strike with respect to his 1983 conviction for first degree residential burglary, in violation of section 459 of the California Penal Code.  However, Petitioner does not appear to challenge counsel's advice to admit this prior serious felony strike, and the substance of his argument focuses solely on counsel's advice that he admit his conviction for assault with intent to commit rape.

1    for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at

2    694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome."

3    *Id. See also Williams v. Taylor*, 529 U.S. 362, 391-92 (2000); *Laboa v. Calderon*, 224 F.3d 972, 981

4    (9th Cir. 2000).

5         A reviewing court "need not determine whether counsel's performance was deficient

6    before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . .

7    . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice

8    . . . that course should be followed." *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (citing

9    *Strickland*, 466 U.S. at 697). In assessing an ineffective assistance of counsel claim, "[t]here is a

10   strong presumption that counsel's performance falls within the 'wide range of professional

11   assistance.'" *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). In addition, there is a strong

12   presumption that counsel "exercised acceptable professional judgment in all significant decisions

13   made." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing *Strickland*, 466 U.S. at 689).

14   Thus, a reasonable tactical decision by counsel with which the defendant disagrees cannot form the

15   basis of an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 689. The court does not

16   consider whether another lawyer with the benefit of hindsight would have acted differently than trial

17   counsel. *Id*. Instead, the court considers whether counsel made errors so serious that counsel failed

18   to function as guaranteed by the Sixth Amendment. *Id*. at 687.

19       **1.**      **COUNSEL'S ADVICE TO ADMIT A PRIOR STRIKE**

20         Petitioner claims that counsel provided prejudicially ineffective assistance by

21   advising him to admit a 1991 conviction for assault with intent to commit rape. According to

22   Petitioner, the conviction could not be admitted at trial because a police officer was permitted to

23

24

25

26                         -10-

present hearsay testimony, pursuant to Proposition 115,[2] at the preliminary hearing for his 1991 trial. Moreover, Petitioner argues that absent his admission, the prosecution presented insufficient evidence to demonstrate that he suffered a prior serious felony conviction for assault with intent to commit rape. Petitioner further argues that the evidentiary record does not demonstrate that he was convicted of assault with intent to commit rape as opposed to simple assault, which he contends does not constitute a serious felony for the purposes of California's statutory three strikes sentencing scheme under sections 1192.7 and 667 of the California Penal Code.

With respect to Petitioner's allegation that counsel was ineffective for failing to argue that evidence of his 1991 conviction was inadmissible because it was based on hearsay testimony

---

[2] Proposition 115 is an initiative measure adopted by California voters at the June 5, 1990 primary election. The changes in California law effected by the proposition have been described by the California Supreme Court, as follows:

> Among other things, Proposition 115, enacted in 1990, adopted article I, section 30, subdivision (b) of the California Constitution, declaring hearsay evidence admissible at preliminary examinations in criminal cases, as may be provided by law. In addition, the measure amended Penal Code section 872, subdivision (b), to prove that a probable cause determination at a preliminary examination may be based on out-of-court declarant's hearsay statements related by a police officer with certain qualifications and experience. Additionally, the measure added Evidence Code section 1203.1 to provide a preliminary examination exception to the general requirement that all hearsay declarants be made available for cross-examination.
>
> Further, the 1990 measure amended Penal Code section 866, subdivision (a), to give magistrates discretion to limit defendants' right to call witnesses on their behalf. [Citation.] Finally, the measure added Penal Code section 866, subdivision (b), which explains, 'It is the purpose of a preliminary examination to establish whether there exists probable cause to believe that the defendant had committed a felony. The examination shall not be used for purposes of discovery.

*People v. Miranda*, 23 Cal.4th 340, 348 (2000).

1   presented at the preliminary hearing in that case, it is not cognizable for habeas corpus relief.  As

2   a general rule, if a prior conviction used to enhance a state sentence is fully expired in its own right,

3   that conviction is not subject to collateral attack through a section 2254 habeas corpus petition.

4   *Lackawanna v. Coss*, 532 U.S. 394, 403-04 (2001); *Daniels v. United States*, 532 U.S. 374, 383

5   (2001); *Gill v. Ayers*, 342 F.3d 911, 919 n.7 (9th Cir. 2003).  Here, Petitioner's 1991 conviction was

6   fully expired at the time of his 2004 trial.

7   Petitioner is also not entitled to relief on the ground that counsel was ineffective for

8   advising him to admit the 1991 conviction because he cannot demonstrate that he suffered any

9   prejudice as a result of the alleged error.  Even absent his admission, sufficient evidence in the trial

10  record demonstrates that he was previously convicted of two serious felonies for sentencing

11  purposes under California's Three Strikes Law.

12  There is sufficient evidence to support a conviction if, "after viewing the evidence

13  in the light most favorable to the prosecution, any rational trier of fact could have found the essential

14  elements of the crime beyond a reasonable doubt."  *Id*.   A federal court conducting habeas corpus

15  review determines sufficiency of the evidence in reference to the substantive elements of the

16  criminal offense as defined by state law.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  In the

17  context of a strike finding under the circumstances of this case, California state law provides that

18  criminal defendants previously convicted of one or more statutorily enumerated "serious" or violent"

19  felonies are subject to enhanced sentences for future convictions.  CAL. PENAL CODE § 667; CAL.

20  PENAL CODE § 1192.7(c).

21  Here, Petitioner was alleged to have suffered two prior "serious" felony convictions:

22  a 1991 conviction for assault with intent to commit rape, in violation of CAL. PENAL § 220, and a

23  1983 conviction for first degree residential burglary, in violation of CAL. PENAL § 459.  Both of

24  these crimes are designated as a "serious" felonies for sentencing purposes under California state

25  law.   CAL. PENAL CODE § 667 (d)(1); CAL. PENAL CODE § 1192.7(c)(10); CAL. PENAL §

26

1192.7(c)(18). In support of the charges that Petitioner had suffered these prior convictions, the prosecution introduced at trial numerous judicial records including, but not limited to, plea agreements signed by Petitioner in both cases and Abstract of Judgment Forms entered by the California Superior Court describing the judgment rendered in each case. CT at 110-130. On this record, even absent Petitioner's admissions, any rational trier of fact would have concluded that the prosecution had proved beyond a reasonable doubt that Petitioner had suffered both prior serious felony convictions for sentencing purposes.

In addition, Petitioner's contention that the evidence presented in support of his conviction for assault with intent to commit rape was insufficient to demonstrate that he was convicted of that crime and not simple assault is incorrect. The record is crystal clear that Petitioner was convicted for violating section 220 of the California Penal Code, assault with intent to commit rape. CT at 110-120. Section 220 does not define a simple assault. Rather, it defines, inter alia, assault with intent to commit rape and other specified sexual offenses. Cal. Penal § 220. Moreover, as previously discussed, the crime is designated as a "serious" felony for sentencing purposes under California state law. CAL. PENAL CODE § 667 (d)(1); CAL. PENAL CODE § 1192.7(c)(10).

Petitioner's contention that, absent his admissions at trial, insufficient evidence in the record supported the allegation that he suffered a prior "serious" felony conviction for assault with intent to commit rape is without merit. On the record in this case, even without Petitioner's admissions, any rational trier of fact would have concluded that the prosecution proved beyond a reasonable doubt that Petitioner suffered a 1991 conviction for assault with intent to commit rape for sentencing purposes. Petitioner has thus failed to establish prejudice as a result of trial counsel's alleged constitutionally deficient advice because there is no reasonable probability that the outcome of his trial would have been any different absent his admissions.

Petitioner is not entitled to federal habeas corpus relief on this claim.

**2.      FAILING TO OBJECT TO TESTIMONY OF JESSIE DICUS**

-13-

1    Petitioner claims that counsel rendered prejudicially ineffective assistance by failing

2  to object to admission of the testimony of Jessie Dicus, the victim of his 1991 assault with attempt

3  to commit rape conviction.   Ms. Dicus was permitted to testify pursuant to section 1108 of the

4  California Evidence Code, which governs the admission in a sexual offense prosecution of evidence

5  that the defendant has committed another sexual offense.   According to Petitioner, he suffered

6  prejudice because admission of Ms. Dicus' testimony permitted the "relitigation" of the

7  circumstances underlying the prior offense many years after it occurred, in violation of his rights to

8  a speedy trial and to be free from double jeopardy.

9    Petitioner's claim that counsel failed to object to Ms. Dicus' testimony must fail

10  because it is factually incorrect.  Prior to trial, the prosecution made a motion to admit at trial the

11  testimony of Ms. Dicus regarding the details of Petitioner's 1991 conviction for assault with attempt

12  to commit rape.  CT at 56-72.  In addition, the prosecution wished to present testimony from three

13  other witnesses regarding uncharged prowling and indecent exposure offenses which resulted in

14  Petitioner's return to prison on a state parole violation in 1999.  Petitioner's trial counsel filed a

15  motion in opposition to the testimony of all four witnesses.  CT at 75-78.  On Tuesday, May 11,

16  2004, the court conducted a hearing outside the presence of the jury and entertained oral arguments

17  on the motions.  Following argument by both parties, the court determined that evidence of the

18  uncharged prowling offense was not governed by section 1108 of the California Evidence Code, that

19  Petitioner's intent was not proven, and that the evidence  would be unduly prejudicial. RT at 18-20.

20  Accordingly, the court held that no testimony would be permitted regarding the uncharged prowling

21  offense.  RT at 19-20.  Likewise, the court declined the prosecution's request to admit testimony

22  regarding the indecent exposure offense on the grounds that it was too dissimilar to the charges

23  Petitioner currently faced.  RT at 24-25.  Conversely, the court was inclined to allow Ms. Dicus'

24  testimony regarding the prior assault with intent to commit rape under section 1108 of the California

25  Penal Code, however, it withheld a final ruling pending review of a cases which the defense and the

26                                    -14-

1  prosecution believed supported their respective positions.  RT at 29, 34.

2         The following morning, once again outside the presence of the jury, the trial court

3  revisited the matter of whether Ms. Dicu would be permitted to testify regarding the factual

4  circumstances underlying Petitioner's 1991 conviction for assault with intent to commit rape.  The

5  court, having reviewed the cases cited by the both parties, ruled that, pursuant to section 1108 of the

6  California Evidence Code, the testimony would be permitted.  RT at 37-39.  Following the court's

7  ruling, defense counsel requested a stipulation that he would not be required to object in front of the

8  jury during Ms. Dicus' testimony on the grounds that the court's ruling regarding the admissibility

9  of the testimony would remain the same, and explaining that he wished to preserve the record.  RT

10  at 39-40.  The trial court granted the request, recognizing that it would minimize the potential

11  prejudicial impact of Ms. Dicus' testimony on the jury.  RT at 40.  Thus, on the record in this case,

12  counsel's performance was not deficient on the grounds that he failed to object to Ms. Dicus'

13  testimony at trial because counsel did, in fact, object.  Because counsel's performance was not

14  deficient, no prejudice could result.

15         Petitioner is not entitled to federal habeas corpus relief on this claim.

16  **B.     JURY INSTRUCTIONS (Petitioner's Claims Three and Six)**

17         Petitioner challenges the trial court's refusal to instruct on what he contends was a

18  lesser included offense to the charges he faced, as well as the trial court's instruction that the jury

19  could convict him based on propensity evidence alone.  For the following reasons, neither claim

20  entitles Petitioner to federal habeas corpus relief.

21         **1.     TRIAL COURT'S REFUSAL TO INSTRUCT ON A LESSER INCLUDED
                    OFFENSE UNDER SECTION 647.6(a) OF THE CALIFORNIA PENAL CODE**
22                 **(Petitioner's Claim Three)**

23         Petitioner was charged with and convicted of committing three felony counts of lewd

24  and lascivious acts upon a child under the age of fourteen years, in violation of section 288(a) of the

25  California Penal Code.  Petitioner claims that the trial court erred by declining his request at trial

26                                              -15-

to instruct the jury pursuant to section 647.6 of the California Penal Code, the misdemeanor offense

of annoying or molesting a child, which he argues is a lesser included offense of section 288(a).[3]

The California Court of Appeal, Third Appellate District, considered and rejected Petitioner's claim

on direct appeal, explaining as follows:

> Defendant contends this offense[, annoying and molesting a child, in
> violation of Penal Code section 647.6, subdivision (a),] is a lesser
> included offense of Penal Code section 288, subdivision (a) under the
> accusatory pleading test and that failure to give the instruction as
> requested by counsel was reversible error.   Relying on *People v.
> Lopez* (1998) 19 Cal.4th 282 (*Lopez*), the People contend Penal Code
> section 647.6 is not a lesser included offense of Penal Code section
> 288 under either the elements or the accusatory pleading test.  We
> conclude the instruction would not have been appropriate.

> The trial court has a sua sponte duty to instruct the jury on lesser
> included offenses "if the evidence 'raises a question as to whether all
> of the elements of the charged offense are present and there is
> evidence that would justify a conviction of such a lesser offense.
> [Citations.]' [Citations.]" (*Lopez, supra,* 19 Cal.4th at pp. 287-288.)
> Stated another way, "'[a] criminal defendant is entitled to an
> instruction on a lesser included offense only if [citation] "there is
> evidence which, if accepted by the trier of fact, would absolve [the]
> defendant from guilt of the greater offense" [citation] *but not the
> lesser.* [Citations.]'" (*Id*. at p. 288, quoting *People v. Memro* (1995)
> 11 Cal.4th 786, 871.)

> Two tests are used for determining whether an offense is a lesser
> included offense, the "elements" test and the "accusatory pleading"
> test.  (*Lopez, supra*, 19 Cal.4th at p. 288.)  Under the elements test,
> if the greater offense cannot be committed without necessarily
> satisfying all the elements of the lesser offense, the latter is a
> necessarily included lesser offense.  (*Ibid*.)  Under the "accusatory

---

[3] Petitioner's jury was instructed on the crimes charged, felony counts of lewd and lascivious acts upon a child under fourteen years of age, section 288(a) of the California Penal Code, as well as on the lesser included misdemeanor offenses of sexual battery, section 243.4(e)(1), and battery, section 242. To the extent Petitioner's claim of instructional error rests on an allegation that the trial court improperly distinguished between felonies and misdemeanors in the jury instructions because it emphasized the more serious offense and made the jurors less likely to convict on a lesser offense, it is without merit.  The jury was instructed on the elements required to be proven by the prosecution beyond a reasonable doubt in order to reach a guilty verdict on each offense, as well as on the Petitioner's presumption of innocence.  Jurors are presumed to follow the court's instructions. *Kansas v. Marsh*, 548 U.S. 163, 179 (2006); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987).

pleading" test, a lesser offense is included within the greater offense if "the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense." (*People v. Birks* (1998) 19 Cal.4th 108, 117; see also *Lopez*, at p. 289.)

Penal Code section 288 makes it a felony for any person "who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body . . . of a child who is under the age of 14 years, with the intent of arousing . . . or gratifying the lust, passions, or sexual desires of that person or the child . . . ." This section is violated by any touching of the under-age child if it is accompanied by the intent to arouse or gratify the sexual desires of either the perpetrator or the child. (*Lopez, supra,* 19 Cal.4th at p.289; *People v. Martinez, supra,* 11 Cal.4th at pp.450-452.)

Penal Code section 647.6 defines a misdemeanor offense for "[e]very person who annoys or molests any child under 18 years of age . . . ." A violation of this section does not require a touching (*People v. Memro, supra,* 11 Cal.4th at p. 871) but does require "(1) conduct a '"normal person would unhesitatingly be irritated by"' [citations, and (2) conduct '"motivated by an unnatural or abnormal sexual interest"' in the victim" (*Lopez, supra,* 19 Cal.4th at p. 289.) The "words 'annoy' and 'molest' . . . are synonymous and generally refer to conduct designed to disturb, irritate, offend, injure, or at least tend to injure, another person." (*Id.* at p. 289.) The words "ordinarily relate to offenses against children, with a connotation of abnormal sexual motivation." (*Id*. at p. 290.) Because the prohibited conduct relates not to the child's state of mind, but to the defendant's objectionable acts, the courts employ an objective test "to determine whether the defendant's conduct would unhesitatingly irritate or disturb a normal person." (*Ibid.*)

Employing these principles, the court in *Lopez* held that a violation of Penal Code section 647.6 is not a lesser included offense of Penal Code section 288 under the elements test. (*Lopez, supra,* 19 Cal.4th at p. 292.) The court reasoned that a violation of Penal Code section 288 "requires a touching, even one *innocuous or inoffensive* on its face, done with lewd intent. [Penal Code] Section 647.6 . . . on the other hand, requires an act *objectively and unhesitatingly viewed as irritating or disturbing*, prompted by an abnormal sexual interest in children." (*Id.* at p. 290.) The court noted that physical affection among relatives is generally considered acceptable conduct, but if it is imposed on an under-age child with the requisite lewd intent, such conduct would violate Penal Code section 288. However, the conduct may be objectionably inoffensive behavior, which would not violate Penal Code section 647.6. The court therefore concluded the criminal conduct prohibited by Penal Code section 288 could occur without necessarily violating Penal Code section 647.6 because "not every touching with lewd intent will produce the objective irritation

-17-

or annoyance necessary to violate [Penal Code] section 647.6." (*Lopez, supra,* at pp. 290-291.)

The court in *Lopez* also held that Penal Code section 647.6 was not a lesser included offense of Penal Code section 288 under the accusatory pleading test, because the pleading in that case alleged the defendant "'touched[ed] [the] victim's vaginal area outside of her underwear' for purposes of his sexual gratification." (*Lopez, supra,* 19 Cal.4th at p. 293.)   The court found that language did not necessarily allege an objectively irritating or annoying act of child molestation because "[a] female child who rides on her father's shoulders might have contact between her vaginal area and her father's neck or shoulders but that contact would not unhesitatingly irritate or disturb a reasonable person."  (*Id.* at p. 294.)

Applying the reasoning of *Lopez*, we hold that Penal Code section 647.6 is not a lesser included offense of the crimes here alleged.

In count one it was alleged that "defendant touched [the] victim's buttocks with his hand," while in counts two and three it was alleged "defendant grabbed and squeezed [the] victim's buttocks."

The determinative question then is whether the alleged acts of "touching" or "grabbing and squeezing" the victims' buttocks necessarily constitute an objectively irritating or annoying act.  In determining whether Penal Code section 647.6 constituted a lesser included offense of Penal Code section 288 under the elements test, the court in *Lopez* rejected the argument that an objective appraisal of the defendant's conduct would include consideration of his intent. (*Lopez, supra,* 19 Cal.4th at p. 291.)  The same may also be said under the accusatory pleading test, because the same test applies for determining whether the conduct is unhesitatingly annoying and disturbing.

Therefore, disregarding the alleged lewd intent, we consider whether the defendant's act of "touch[ing the] victim's buttock with his hand" is, standing alone, unhesitatingly irritating or annoying. We conclude it is not because it may be the act of a male family member who touches a child's buttocks with his hand in the course of lifting or carrying the child or when encouraging a young child by pushing her forward.  Because the touching may appear innocent and inoffensive to a normal observer, the allegation fails to allege conduct necessarily within the definition of Penal Code section 647.6.

Arguably, one may reach the same conclusion with respect to the allegations of grabbing and squeezing the victims' buttocks.  There may be circumstances where such an act might not be considered an objectively irritating or annoying act of child molestation as where a parent or a medical practitioner may be called upon to do so in a

legitimate effort to tend to a child's needs.  In fact, given the test in *Lopez*, that is, by asking whether there may be a setting where the act of which the defendant is accused is not objectively irritating, most touchings of a child could be accomplished under some circumstances that might not be objectively irritating or annoying.

But we need not struggle with this troubled area of the law.

A trial court is required to instruct the jury on a lesser included offense only if there is *substantial* evidence that, if accepted by the jury, would absolve the defendant of the greater offense, but not the lesser.  (*People v. Waidla* (2000) 22 Cal.4th 690, 733; *People v. Memro, supra,* 11 Cal.4th at p. 871.)  In this matter, the evidence was overwhelming that defendant intentionally touched, grabbed, and squeezed the buttocks of two young girls he did not know while he was walking around a grocery store.  The defense did not present evidence and the prosecution's evidence was such that, under the circumstances, such touchings, if done intentionally as the jury found they were, could only have been done by a person harboring a lewd and lascivious intent.  There was no evidence to the contrary for the jury to consider, much less substantial evidence that would absolve the defendant of the greater offense.  The fact that he did not flee after these assaults does not change the character of them once the jury concluded he intentionally touched these children in the manner alleged in the complaint.  And the fact that he did not flee, but did move his truck so that he had a better view of the entrance of the store, is equally consistent with the thought that he was watching the door for further opportunities to sexually assault young girls.

One may, of course, speculate that defendant acted without a lewd and lascivious intent by imagining scenarios under which these acts might have occurred without the required intent.  "'But speculation is not evidence, less still substantial evidence.' [Citations.]" (*People v. Waidla, supra*, 22 Cal.4th at p. 735.)  Thus, in the final analysis, there was insufficient evidence to justify an instruction on a lesser offense of violating Penal Code section 647.6, even if such a lesser offense had been theoretically available under the accusatory pleading test.  There was no error.

Resp. Ans. Ex. A at 33-39.

Federal courts are bound by a state appellate court's determination that a jury instruction was not warranted under state law.  *See Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) (per curiam) (noting that the Supreme Court has repeatedly held that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal

1  court sitting in habeas corpus."). Moreover, "[n]ormally jury instructions in State trials are matters

2  of State law." *Hallowell v. Keve*, 555 F.2d 103, 106 (3rd Cir. 1977) (citation omitted); *see also*

3  *Williams v. Calderon,* 52 F.3d 1465, 1480-81 (9th Cir. 1995). An instructional error "does not alone

4  raise a ground cognizable in a federal habeas proceeding." *Dunckhurst v. Deeds,* 859 F.2d 110, 114

5  (9th Cir. 1988) (citation omitted); *see also Van Pilon v. Reed,* 799 F.2d 1332, 1342 (9th Cir. 1986)

6  (claims that merely challenge correctness of jury instructions under state law cannot reasonably be

7  construed to allege a deprivation of federal rights) (citation omitted).

8           Here, the instruction in question is a lesser included offense instruction. There is no

9  clearly established federal law that requires a state trial court to give a lesser included offense

10  instruction as would entitle Petitioner to relief. *See* 28 U.S.C. § 2254(d) (1); *Beck v. Alabama*, 447

11  U.S. 625, 638 & n. 7 (1980) (holding that failure to instruct on lesser included offense in a *capital*

12  case is constitutional error if there was evidence to support the instruction but expressly reserving

13  "whether the Due Process Clause would require the giving of such instructions in a non-capital

14  case"); *Solis v. Garcia,* 219 F.3d 922, 929 (9th Cir. 2000) (in non-capital case, failure of state court

15  to instruct on lesser included offense does not alone present a federal constitutional question

16  cognizable in a federal habeas corpus proceeding); *Windham v. Merkle,* 163 F.3d 1092, 1106 (9th

17  Cir. 1998) (failure of state trial court to instruct on lesser included offenses in non-capital case does

18  not present federal constitutional question). Moreover, even if clearly established federal law did

19  require a state trial court to give a lesser included offense instruction, the state appellate court

20  determined in this case that the offense prohibited by section 647.6, annoying or molesting a child,

21  is not a lesser included offense of section 288, lewd and lascivious acts upon a child under the age

22  of fourteen years. As noted above, federal courts are "bound by a state court's construction of its

23  own penal statutes." *Aponte v. Gomez*, 993 F.2d 705, 707 (9th Cir. 1993); *Oxborrow v. Eikenberry*,

24  877 F.2d 1395, 1399 (9th Cir. 1989) (a federal court conducting habeas corpus review must defer

25  to the state court's construction of its own penal code unless its interpretation is "untenable or

26                                          -20-

1   amounts to a subterfuge to avoid federal review of a constitutional violation"). Accordingly, to the

2   extent that Petitioner's argument is based solely upon the trial court's failure to give a lesser

3   included offense instruction, this claim is not cognizable on federal habeas review.

4           Petitioner could still be entitled to habeas corpus relief if he could establish that the

5   state court violated his due process rights by omitting the jury instruction if the alleged error so

6   infected the entire trial that the resulting conviction violated due process. *Henderson v. Kibbe,* 431

7   U.S. 145, 155 (1977); *Menendez v. Terhune,* 422 F.3d 1012, 1029 (9th Cir. 2005). In order to

8   prevail on due process grounds, however, a petitioner must demonstrate that the alleged instructional

9   error had a "substantial and injurious effect in determining the jury's verdict." *Brecht v.*

10  *Abrahamson*, 507 U.S. 619, 623 (1993). In other words, he must prove that, had the requested

11  instruction been given, there is a "reasonable probability" that the jury would have reached a

12  different verdict. *Clark v. Brown*, 450 F.3d 898, 916 (9th Cir. 2006). In the context of an allegation

13  that the trial court failed to give a jury instruction, however, a petitioner's burden is "especially

14  heavy," because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a

15  misstatement of the law." *Henderson,* 431 U.S. at 155.

16          Petitioner has failed to meet the demanding standard for habeas corpus relief based

17  on an alleged instructional error. The trial court's refusal to give a lesser included offense

18  instruction with respect to the misdemeanor offense of annoying or molesting a child, pursuant to

19  section 647.6 of the California Penal Code, did not render his trial fundamentally unfair in violation

20  of due process. As properly explained by the state appellate court, quoted above, substantial

21  evidence in the record supported Petitioner's conviction for three felony counts of lewd and

22  lascivious acts upon a child under the age of fourteen years, in violation of section 288(a). Thus,

23  there is no reasonable probability that, had the jury been instructed as Petitioner wished, the outcome

24  of his trial would have been different.

25          Petitioner is not entitled to federal habeas corpus relief on this claim.

26                                               -21-

2.   **TRIAL COURT'S INSTRUCTION TO THE JURY THAT PETITIONER COULD BE CONVICTED BASED ON PROPENSITY EVIDENCE ALONE (Petitioner's Claim Six)**

Petitioner claims that the trial court denied his right to due process of the law by instructing the jury that it could convict him based solely on propensity evidence presented at trial that he had committed a prior sexual offense.  According to Petitioner, this allowed the jury to convict him without being required to find that he was guilty of the current charged offenses beyond a reasonable doubt.  At Petitioner's trial, the court gave the following instruction, pursuant to the 2002 version of CALJIC No. 2.50.01:

> Evidence has been introduced for the purpose of showing that the defendant engaged in a sexual offense other than that charged in the case.
>
> ["Sexual offense" means a crime under the laws of a state or of the United States that involves any of the following:
>
> [Any conduct made criminal by Penal Code section 220.  The elements of this crime are set forth elsewhere in this instruction.]
>
> If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit sexual offenses.  If you find that the defendant had this disposition, you may, but are not required to, infer that [he] was likely to commit and did commit the crime [or crimes] or which [he] is accused.
>
> *However, if you find by a preponderance of the evidence that the defendant committed [a] prior sexual offense, that is not sufficient by itself to prove beyond a reasonable doubt that [he] committed the charged crime[s].*  If you determine an inference properly can be drawn from this evidence, along with all other evidence, this inference is simply one item for you to consider, along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime. [[Unless you are otherwise instructed, you must not consider this evidence for any other purpose.]

CT at 173 (emphasis added).

The California Court of Appeal considered and rejected Petitioner's claim on direct appeal, explaining as follows:

-22-

Defendant contends this instruction violated his due process right to be convicted on proof beyond a reasonable doubt. He acknowledges the instruction states that "propensity evidence is insufficient to return a conviction when the evidence of prior sexual offenses is found to be true 'by a preponderance of the evidence.'" However, he argues this statement in the instruction may be read to imply that such propensity evidence *is* sufficient to prove the charged offense if the prior sexual offense is proven *beyond a reasonable doubt*. He argues "a reasonable juror would so understand the instruction." Defendant further contends the instruction violates due process because "it is doubtful that jurors could abide by the limitations it places on the use of highly prejudicial evidence."

We evaluate a claim of instructional error by examining jury instructions as a whole and determining whether there is a reasonable likelihood the jury misunderstood the instructions in the manner suggested by defendant. (*People v. Clair* (1992) 2 Cal.4th 629, 662-663.) In this instance, we find no reasonable likelihood the jury would have misconstrued or misapplied the language of this instruction to convict defendant based on predisposition evidence alone if it found such evidence was proved beyond a reasonable doubt. Such a construction would ignore the language of the instruction informing the jury that, "this inference is simply one item for you to consider along with all of the other evidence in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime." Moreover, as defendant concedes, the Supreme Court rejected a due process challenge to an earlier version of CALJIC No. 2.50.02 (1999 rev.) in *People v. Reliford*, (2003) 29 Cal.4th 1007, 1009 (*Reliford*) and, in doing so, noted that the 2002 version used in this case is an improvement. (*Id.* at p. 1016.) Defendant raises the issue here merely to preserve it for federal review. We are bound by *Reliford* (*Auto Equity Sales, Inc. v. Superior Court, supra*, 57 Cal.2d at p. 455) and therefore reject defendant's due process claim.

Resp. Ans. Ex. A at 22-24.

In state criminal trials, the Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). "[T]he Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, 'taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury." *Victor v. Nebraska*, 511 U.S. 1, 5

-23-

1    (1994) (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954) (internal citations omitted)).

2    In evaluating the constitutionality of a jury charge such as CALJIC No. 2.50.01, it must be

3    determined "whether there is a reasonable likelihood that the jury understood the instructions to

4    allow conviction based on proof insufficient to meet the *Winship* standard." *Id*. at 6. *See also*

5    *Lisenbee v. Henry*, 166 F.3d 997, 999 (9th Cir. 1999); *Ramirez v. Hatcher*, 136 F.3d 1209, 1211 (9th

6    Cir. 1998).

7            The rejection of Petitioner's claim by the state appellate court was not contrary to,

8    nor an unreasonable application of clearly established federal law.  On the record in this case,

9    Petitioner has failed to demonstrate a reasonable likelihood that the jury understood the instructions

10   given to suggest a standard of proof lower than due process requires or to allow his conviction based

11   on factors other than the prosecution's proof.  A review of the instructions in their entirety reveals

12   that the jury was instructed that the instructions were to be considered "as a whole and each in light

13   of all the others," that Petitioner was "presumed to be innocent," that the prosecution bore the

14   burden of proving guilt beyond a reasonable doubt, and that reasonable doubt was not "a mere

15   possible doubt . . . [but] that state of the case which, after the entire comparison and consideration

16   of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an

17   abiding conviction of the truth of the charge."  CT at 157, 180.  Moreover, in instructing the jury

18   pursuant to CALJIC No. 2.50.01, as quoted above, the trial court clearly specified that a finding that

19   Petitioner had committed the prior sexual offense was insufficient on its own to prove that he

20   committed the charges he faced at trial.  The jury instructions as a whole properly conveyed the

21   prosecutor's burden of proof and did not suggest that Petitioner could be convicted on a standard

22   of proof less than reasonable doubt.  Jurors are presumed to have followed the court's instructions.

23   *Kansas v. Marsh*, 548 U.S. 163, 179 (2006); *Zafiro v. United States*, 506 U.S. 534, 540 (1993);

24   *Taylor v. Sisto*, 606 F.3d 622, 626 (9th Cir. 2010).

25           Petitioner is not entitled to federal habeas corpus relief on this claim.

26                                                    -24-

1   **C.   ADMISSION OF PRIOR OFFENSE EVIDENCE (Petitioner's Claims Four and Five)**

2          In Petitioner's Claim Four, he contends that the trial court abused its discretion under

3   sections 352 and 1108 of the California Evidence Code by admitting evidence of a prior sexual

4   offense that he contends was far more prejudicial than probative .  Petitioner's Claim Five is that

5   admission of the evidence of the prior sexual offense to demonstrate that he had a propensity to

6   commit sex crimes denied him due process to a fair trial.  Because these two claims are intertwined,

7   they will be discussed together in this section.

8          The California Court of Appeal considered and rejected both of Petitioner's claims

9   on direct appeal, explaining as follows:

10                                              I.

11                     *Evidence Code Section 1108 and Due Process of Law*

12          Defendant contends the admission of evidence of prior sexual
        offenses under Evidence Code section 1108 deprived him of his right
13      to due process of law.  He makes this argument "solely to preserve
        [his] right to federal relief in the event . . . [California] law is
14      eventually overturned."

15          Defendant recognizes the California Supreme Court rejected this
        argument in *People v. Falsetta* (1999) 21 Cal.4th 903 (*Falsetta*).  We
16      are bound by that decision.  (*Auto Equity Sales, Inc. v. Superior
        Court* (1962) 57 Ca.2d 450, 455.)

17                                             II.

18
                               *Evidence Code Section 352*
19
20          Defendant contends that, even if the admission of evidence of prior
        sexual misconduct did not violate his right to due process of law, the
21      trial court abused its discretion by admitting evidence, pursuant to
        Evidence Code section 1108, of the 1991 assault with intent to
22      commit rape committed against Jessie.  He argues that due to the
        significant passage of time, the substantial dissimilarities between the
23      charged and uncharged offenses, and the inflammatory nature of the
        uncharged offense, its minimal probative value was substantially
24      outweighed by its prejudicial effect.

25          The People contend the trial court did not abuse its discretion,
        because there was some similarity between the charged and

26                                           -25-

uncharged offenses that showed defendant's propensity to sexually assault young girls and the evidence of the assault was not speculative or especially inflammatory.

We find no error.

### A.  Governing Principles

Evidence Code section 1108, subdivision (a), provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352."  A "sexual offense" within the meaning of Evidence Code section 1108, subdivision (a), includes a violation of Penal Code section 288.  (Evid. Code, § 1108, subd. (d) (1) (A).)

Evidence Code section 352 gives the trial court discretion to exclude evidence if the probative value of the evidence is "substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code § 352.)

Thus, Evidence Code section 1108 is a stand-alone statutory exception to the exclusion of propensity evidence mandated by Evidence Code section 1101, subdivision (a).  The admissibility of propensity evidence "radically changed with respect to sex crime prosecutions with the advent of [Evidence Code] section 1108. Determining that, in a sex offense prosecution, the need for evidence of prior uncharged sexual misconduct is particularly critical given the 'serious and secretive nature of sex crimes and the often resulting credibility contest at trial' (*People v. Fitch* (1997) 55 Cal.App.4th 172, 181-182), the Legislature enacted [Evidence Code] Section 1108, which provides that evidence of a prior sexual offense 'is not made inadmissible by [Evidence Code] Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352.'  By removing the restriction on character evidence in [Evidence Code] Section 1101, [Evidence Code] section 1108 no 'permit[s] the jury in sex offense . . . cases to consider evidence of prior offenses *for any relevant purpose*' (*People v. James* (2000) 81 Cal.App.4th 1343, 1352, fn. 7, italics added), subject only to the prejudicial effect versus probative value weighing process required by [Evidence Code] section 352."  (*People v. Britt* (2002) 104 Cal.App.4th 500, 505 (*Britt*).)

### B.  The Trial Court's Ruling

The People moved to admit the evidence of the uncharged offense

under Evidence Code sections 1101, subdivision (b), to show intent, and 1108, to show propensity to commit sexual assaults. The court denied the motion under Evidence Code section 1101, subdivision (b), finding the uncharged and charged offenses were not sufficiently similar, but granted the motion under Evidence Code section 1108.

### C. Abuse of Discretion Under Evidence Code Section 352

We review the trial court's ruling for an abuse of discretion (*People v. Frazier* (2001) 89 Cal.App.4th 30, 42), which means "[t]he trial court enjoys broad discretion under Evidence Code section 352 in determining whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time and this discretion is built into Evidence Code section 1108, subdivision (a). The exercise of this statutory discretion will not be disturbed on appeal "'except on a showing that the trial court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." . . .'" (*Id.* at p. 42.)

In *Falsetta, supra,* 21 Cal.4th 903, our high court addressed factors to be considered in determining whether evidence offered pursuant to Evidence Code section 1108 should be excluded pursuant to Evidence Code section 352. The court said: "[T]rial judges must consider such factors as [the uncharged sex offense's ] nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden of the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant through inflammatory details surrounding the offense." (*Falsetta, supra,* at p. 917.)

In its discussion on this point, the *Falsetta* court made reference to its holding in *People v. Balcom* (1994) 7 Cal.4th 414, which "explained that the probative value of 'other crimes' evidence is increased by the relative similarity between the charged and uncharged offenses, the close proximity in time of the offenses, and the independent sources of evidence (the victims) in each offense. (*Balcom, supra,* 7 Cal.4th at p. 427.) [The court] also observed that the prejudicial impact of the evidence is reduced if the uncharged offenses resulted in actual *convictions* and a prison term, ensuring that the jury would not be tempted to convict the defendant simply to punish him for other offenses, and that the jury's attention would not be diverted by having to make a separate determination whether defendant committed the other offenses. (*Ibid.*)" (*Falsetta, supra,* 21 Cal.4th at p. 917.)

-27-

As we have said, we are called upon to decide whether the trial judge's decision to admit the evidence of the 1991 assault on Jessie with intent to commit rape was arbitrary, capricious or patently absurd such that it resulted in a manifest miscarriage of justice. (*People v. Frazier, supra*, 89 Cal.App.4th at p. 42.)  It was not.

Considering the factors referred to above, the attack on 15-year-old Jessie was probative in that it demonstrated defendant had an abnormal sexual interest in young girls, even though Jessie was some four years older at the time she was assaulted than the victims in this case.   The evidence of the assault on Jessie was not highly inflammatory, since the defendant broke off the attack when Jessie fought back and Jessie was not physically harmed except for scrapes and bruises.  The jurors were not likely to be so angered by the attack on Jessie that they were unable to objectively consider the evidence relating to the charges before them.

While the incident with Jessie was somewhat remote, defendant was, as a result of it, sent to state prison, which necessarily reduced the number of years he was free of custody before 2003, when the incidents charged in this matter occurred.  It is certain that defendant committed the offense against Jessie because he admitted to it; there was no burden to defendant in defending against it.   And the prejudicial impact of the prior offense was diminished by the fact that defendant was convicted of the offense and served a term in state prison.  Thus, the jury in this matter was not tempted to convict him simply to punish him for the offense against Jessie.

There is the issue of the similarity of the offenses which is one of the factors relevant to the Evidence Code section 352 analysis.  There is obviously some dissimilarity between an assault with intent to commit rape on a 15-year-old girl in a secluded area and the lewd and lascivious grabbing of the buttocks of two 11-year-old girls in a public setting.  Even so, there are similarities, too, including most importantly, the fact that defendant demonstrated on an earlier occasion an aberrant sexual interest in young girls.  The prior sexual offense was not, after all, committed on an adult.  It was committed on a 15-year-old girl.  Justice Blease, in dissent, refers to Jessie as "a sexually mature 15-year-old high school student." (Dis. opn., *post,* at p. 27.)  But we note that, other than chronological age, there is no evidence in the record relating to Jessie's "sexual maturity" or her "maturity" in general or the "maturity" of the two victims in the instant case.

Justice Blease is of the opinion that the offenses were so dissimilar that it was a prejudicial abuse of discretion to admit the evidence of defendant's sexual assault on Jessie.  He says the most significant issue before the jury was the question of defendant's intent and then imports the body of law relating to evidence of intent as that concept

appears in Evidence Code section 1101, subdivision (b), particularly that which speaks to the necessary degree of similarity between the current offense and the uncharged offense. In doing so, we think he elevates the question of similarity of the offense beyond that which is appropriate in judging the admissibility of evidence under Evidence Code section 1108.

In *Britt*, referred to earlier, the defendant argued that evidence offered under Evidence Code section 1108 could only be used to prove "propensity" and not identity. If offered to prove identity, the defendant argued, the evidence was only admissible if the prior conduct was so distinctive as to be like a signature, thus incorporating the analysis of evidence offered to prove identity under Evidence Code section 1101, subdivision (b), as set forth in *People v. Ewoldt* (1994) 7 Cal.4th 380 (*Ewoldt*).

We rejected that argument, observing: "The flawed premise in Britt's argument is that [Evidence Code] section 1101, subdivision (b)'s test for admissibility of prior uncharged offense in a sex offense case survived the enactment of [Evidence Code] section 1108. It did not. 'In enacting Evidence Code section 1108, the Legislature decided evidence of uncharged sexual offenses is so uniquely probative in sex crimes prosecutions it is presumed admissible *without regard to the limitations of Evidence Code section 1101*.' (*People v. Yovanov* (1999) 69 Cal.App.4th 392, 405, italics added.) When [Evidence Code] section 1108 swept away the general prohibition on character evidence set forth in [Evidence Code] section 1101, it rendered moot the exceptions to that prohibition created by [Evidence Code] section 1101, subdivision (b). Thus, in a sex crime prosecution, the 'signature test' is no longer the yardstick for admission of uncharged sexual misconduct to prove identity." (*Britt, supra,* 104 Cal.App.4th at pp.505-506.)

Although *Britt* dealt with the question of Evidence Code section 1108 evidence as it bears on identity, its holding applies equally to Evidence Code section 1108 evidence offered to prove intent. The similarity analysis of *Ewoldt* simply does not apply. Similarity of the crimes is a consideration in the Evidence Code section 352 analysis required by Evidence Code section 1108, inasmuch as it is one of many factors for the trial court to consider when the evidence is offered pursuant to that section. However, similarity plays a much smaller role on the question of admissibility under Evidence Code section 1108 than it does when the court is considering propensity evidence as an exception to the rule of inadmissibility set forth in Evidence Code section 1101.

Our view on this point is consistent with the legislative history of Evidence Code section 1108. In the "Letter of Intent" from Assembly Member Rogan dated August 24, 1995 regarding the bill

-29-

that became Evidence Code section 1108–a letter our Supreme Court relied on in part in deciding the issues presented in *Falsetta*–Assembly Member Rogan reported that "[d]uring the hearing before the Assembly Committee on Public Safety, the language of [section 1108] of the Evidence Code was amended to provide explicitly that evidence of other offenses within the scope of the section is not subject to [Evidence Code section 1101]'s prohibition of evidence of character or disposition.  This makes it clear that [Evidence Code section 1108] permits courts to admit such evidence on a common sense basis–without a precondition of finding a 'non-character' purpose for which it is relevant–and permits rational assessment by juries of evidence so admitted." (Letter by Assembly Member Rogan (Aug. 24, 1995) regarding Assem. Bill No. 882, pub. in 2 Assem. J. (1995-(1996 Reg. Sess.) p. 3278, reprinted at 29B pt. 3 West's Ann. Evid. Code (2006 pocket supp.) foll. § 1108, pp. 180-181 (hereinafter Letter of Intent).)

The Letter of Intent goes on to say that "[a]t the hearing before the Judiciary Committee, there was discussion whether more exacting requirements of similarity between the charged offense and the defendant's other offenses should be imposed.  The decision was against making such a change, because doing so would tend to reintroduce the excessive requirements of similarity under prior law which [the bill enacting Evidence Code section 1108] is designed to overcome, *see* Lungren, [*Stopping Rapists and Child Molesters by Giving Juries All the Facts–Reforms in Federal and California Law* in Prosecutor's Brief (1995) volume XVII, No. 2, page 14], and could often prevent the admission and consideration of evidence of other sexual offenses in circumstances where it is rationally probative. Many sex offenders are not 'specialists', and commit a variety of offenses which differ in specific character." (Letter of Intent, 29B pt. 3 West's Ann. Evid. Code, *supra*, foll. § 1108, at p. 181.)

Properly considered, the arguable dissimilarities between the offenses we deal with here cannot lead to the conclusion that the trial court abused its discretion when it admitted, pursuant to Evidence Code section 1108, evidence of the assault on Jessie in 1991.

Resp. Ans. Ex. A at 6-16.

Petitioner's claim that the trial court abused its discretion under sections 352 and 1108 of the California Evidence Code by admitting evidence of the prior sexual offense is not cognizable on federal habeas corpus review.  *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1986); *Givens v. Housewright*, 786 F.2d 1378, 1381 (9th Cir. 1986).  A writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding

1  on the state courts. *Middleton*, 768 F.2d at 1085; *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir.

2  1983).

3            With respect to Petitioner's due process claim, the United States Supreme Court has

4  held that habeas corpus relief should be granted where constitutional errors have rendered a trial

5  fundamentally unfair. *Williams v. Taylor*, 529 U.S. 362, 375 (2000). *See also Drayden v. White*,

6  232 F.3d 704, 710 (9th Cir. 2000). A "petitioner bears a heavy burden of showing a due process

7  violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005).

8            The Supreme Court has yet to rule on whether propensity evidence admitted in a

9  criminal trial pursuant to state evidentiary law violates due process. *See Estelle v. McGuire*, 502

10  U.S. 62, 75 n.5 (1991) ("[W]e express no opinion on whether a state law would violate the Due

11  Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a

12  charged crime."); *Alberni v. McDaniel*, 458 F.3d 860, 866-67 (9th Cir. 2006) (noting that the

13  Supreme Court has denied certiorari at least four times on the propensity evidence issue reserved

14  in *Estelle*). Accordingly, since the Supreme Court has not clearly established that use of propensity

15  evidence in a criminal trial violates due process, a state court's decision on the matter cannot be

16  contrary to or an unreasonable application of clearly established federal law. *See Alberni*, 458 F.3d

17  at 867 (denying due process claim based on the use of propensity evidence for lack of a "clearly

18  established" rule from the Supreme Court).[4]

19  

---

20     [4] It is also worth noting that the Ninth Circuit Court of Appeals has explained how the
California Evidence Code safeguards a criminal defendant's due process rights with regard to the
21  admission of propensity evidence as follows:

22          Our holding in *United States v. LeMay*, 260 F.3d 1018 (9th Cir.
23          2001), supports our conclusion that the admission of the propensity
        evidence did not violate [the petitioner's] due process rights. In
24          *LeMay*, on direct appeal rather than collateral review, we upheld the
        introduction of evidence under Federal Rule of Evidence 414–which
25          is roughly analogous to California Rule of Evidence 1108, allowing

26

1    In any event, even assuming that the admission of the prior sexual offense testimony

2  did violate Petitioner's due process rights, he has failed to demonstrate that the alleged error had a

3  "substantial and injurious effect in determining the jury's verdict." *Brecht*, 507 U.S. at 623.  The

4  evidence presented at trial in support of Petitioner's guilt was overwhelming, including testimony

5  regarding the events underlying his conviction by both victims (RT at 54-77, 97-115), both of their

6  grandmothers (RT at 77-97, 116-138), and one of the officers who responded to the grocery store

7  following the incident and took the victims' statements (RT at 139-170).  Moreover, as discussed

8  above, the jury was properly instructed with regard to the admission of the prior sexual offense

9  evidence, and jurors are presumed to have followed the court's instructions. *Weeks v. Angelone*, 528

10  U.S. 225, 234 (2000),

11    Petitioner is not entitled to federal habeas corpus relief on this claim.

12  **D.    IMPOSITION OF CONSECUTIVE SENTENCES (Petitioner's Claim Seven)**

13    Petitioner claims that the trial court erred by imposing consecutive sentences for his

14  convictions, increasing his punishment beyond the statutorily designated maximum, based on factual

15  findings not submitted to a jury and proven beyond a reasonable doubt, in violation of the rule

16

17    former acts evidence with respect to allegations of child
      molestation–as being consistent with due process requirements. *Id.*

18    at 1022.  We noted that the Rule 414 evidence must pass the
      requirements of Rules 402 and 403, *id.* at 1026-67, the federal

19    analogs to California Evidence Rule 352 under which [the witness']
      testimony was admitted.  We reasoned that due process requires that

20    admission of prejudicial evidence not render a trial fundamentally
      unfair, which Rule 402, ensuring relevance, and Rule 403, guarding

21    against overly prejudicial evidence, together guarantee.  *Id.*
      California Evidence Rule 352 establishes a similar threshold for the

22    propensity evidence introduced at [the petitioner's] trial, suggesting
      that under *LeMay*, Rule 352, like Federal Rules 402 and 403,

23    safeguards due process and protected [the petitioner's] trial from
      fundamental unfairness.

24

25  *Mejia v. Garcia*, 534 F.3d 1036, 1047 n.5 (2008),

26                                          -32-

announced by the Supreme Court in *Blakely v. Washington*, 542 U.S. 296 (2004). "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. *Blakely*, 542 U.S. at 301 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). "[T]he 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.* at 303-04. The California Court of Appeal, Third Appellate District, considered and rejected Petitioner's claim on direct appeal, explaining its reasoning as follows:

*Blakely Error and Full Consecutive Sentencing*

Defendant was sentenced under the three strikes (Pen. Code, § 667) and one strike (Pen. Code, § 667.61) laws. On counts one and three, he received a terms of 15 years to life, tripled to 45 years to life. On count two, he received a term of 25 years to life. The court ran these terms consecutively, for an aggregate term of 115 years to life. Citing *Blakely, supra*, 542 U.S. 296 [159 L.Ed.2d 403], defendant contends the trial court violated his Sixth and Fourteenth Amendment right to trial by jury when it imposed consecutive sentences based on findings of fact not submitted to the jury or found beyond a reasonable doubt. We find no error.

Applying the Sixth Amendment to the United States Constitution, the United States Supreme Court held in *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435] that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be tried to a jury and proved beyond a reasonable doubt. (*Id.* at p. 490 [147 L.Ed.2d at p 455].) The statutory maximum is the maximum sentence that a court could impose based solely on facts reflected by a jury's verdict or admitted by the defendant. Thus, when a sentencing court's authority to impose an enhanced sentence depends upon additional fact findings, there is a right to a jury trial and proof beyond a reasonable doubt on the additional facts. (*Blakely, supra*, 542 U.S. at pp. 303-304 [159 L.Ed.2d at pp. 413-414].)

In *United States v. Booker* (2005) 543 U.S. 220 [160 L.Ed.2d 621] (*Booker*), the court further explained: "If the [sentencing scheme] could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to

-33-

exercise broad discretion in imposing a sentence within the statutory range. [Citations.] . . . For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." (*Id.* at p. 233 [160 L.Ed.2d at p. 643].)

Defendant argues the trial court in the present matter imposed consecutive sentences based on findings, under Penal Code section 667, subdivision (c) (6), that the three offenses were not committed on the same occasion and did not arise from the same set of operative facts. However, as we shall explain in the next section, that was not the basis of the trial court's sentencing decision. Rather, the court imposed consecutive sentences based on the finding that defendant had time between the offenses to reflect on his actions but proceeded anyway.

However, regardless of what findings the court used to justify its sentencing decision, defendant's Sixth and Fourteenth Amendment arguments must be rejected. In *People v. Black* (2005) 35 Cal.4th 1238 (*Black*), the California Supreme Court held: "[T]he judicial factfinding that occurs when a judge exercises discretion to impose an upper term sentence or consecutive terms under California law" (*id.* at p. 1244) does not "violate a defendant's right to a jury trial under the principles set forth in *Apprendi, Blakely, and Booker.*" (*Id.* at p. 1254.) The holding in *Black* is binding on this court. (*Auto Equity Sales, Inc. v. Superior Court, supra,* 57 Cal.2d at p.455.)

Defendant's claim must also be rejected notwithstanding *Black.* Because the trial court had discretion to impose consecutive sentences, a decision to do so would not implicate the *Blakely* line of cases. Those cases do not prohibit judicial fact-finding in the exercise of discretion to impose a sentence within the statutory maximum range. Because there is no right to concurrent sentences, the statutory maximum sentence where a defendant stands convicted of multiple offenses is an aggregate consecutive term. Consequently, the sentence imposed here did not exceed the maximum sentence that could be imposed based solely on the jury's findings. Hence, the trial court's findings of fact to support consecutive sentences did not violate defendant's right to a jury trial.

Resp. Ans. Ex. A at 24-27.

Pursuant to section 667(c)(6) of the California Penal Code, a trial court must impose consecutive terms for current convictions of more than one felony count of certain specified offenses, including lewd and lascivious acts on a child under fourteen year of age, if the crimes were not committed on the same occasion, the crimes did not arise from the same set of operative facts,

-34-

1    and the defendant has previously been convicted of one or more prior violent or serious felonies.

2    Here, the trial court made the requisite findings and imposed concurrent sentences for all three

3    convictions.

4            To the extent Petitioner claims that consecutive sentences were unconstitutionally

5    imposed because a judge, rather than a jury, found that the crimes were not committed on the same

6    occasion and did not arise from the same set of operative facts, his claim is foreclosed by the United

7    States Supreme Court's decision in *Oregon v. Ice*, 555 U.S. 160 (2009).   At issue in *Ice* was an

8    Oregon statute which required a finding of certain facts about the charged sexual offenses before

9    a judge could impose consecutive sentences.   *Id*. At 715-16.   Declining to extend *Apprendi* and

10   *Blakely*, the Supreme Court held that the Sixth Amendment does not prohibit states from assigning

11   to judges, rather than to juries, the finding of facts necessary to impose consecutive sentences for

12   certain offenses.   *Id*. at 718-19.   The Court rejected the petitioner's argument that the Sixth

13   Amendment right to jury is implicated where a state law allows predicate reasons to be found by

14   judges to support the imposition of consecutive sentences.   *Id*. at 718.   Thus, pursuant to the

15   Supreme Court's holding in *Ice*, no relief is available for the trial court's imposition of consecutive

16   sentencing.

17           Petitioner is not entitled to federal habeas corpus relief on this claim.

18                                   **VI.  CONCLUSION**

19           IT IS RECOMMENDED that Petitioner's petition for writ of habeas corpus be

20   denied.   These findings and recommendations are submitted to the United States District Judge

21   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).   Within twenty-one days

22   after being served with these findings and recommendations, any party may file written objections

23   with the court and serve a copy on all parties.   Such a document should be captioned "Objections

24   to Magistrate Judge's Findings and Recommendations."   Any reply to the objections shall be served

25   and filed within seven days after service of the objections.   Failure to file objections within the

26                                        -35-

1  specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d

2  449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In any objections he elects

3  to file petitioner may address whether a certificate of appealability should issue in the event he elects

4  to file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254

5  Cases (the district court must issue or deny a certificate of appealability when it enters a final order

6  adverse to the applicant).

7  DATED: September 6, 2011

8

9  _____
   CHARLENE H. SORRENTINO
   UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26